INHABITANTS OF DURHAM

*vs.*

LISBON FALLS FIBRE COMPANY.

Androscoggin.    Opinion June 2, 1905.

*Waters and Water Courses.   Dams.   Deflection of Current.   Damage to Highway.   Damnum Absque Injuria.   Spec. Laws, 1875, c. 6, sec. 2.   R. S., c. 94, sec. 1.*

When under the provisions of the Mill Act, R. S., chapter 94, section 1, a dam has been legally erected across a non-navigable river, for the purpose of operating a mill, and the location of such dam is neither illegal nor wrongful, and such dam has been constructed in a suitable, skillful and proper manner and is in no way defective or inadequate for the purpose for which it was constructed, and the owners of such dam have neither unreasonably, negligently nor wantonly discharged the head of water accumulated by such dam, but by reason of such dam the current or flow of such river has been deflected towards the shore thereby causing injury to a highway along the bank of such river, *Held:* that such damage is the damnum absque injuria of the common law.

If the plaintiff has suffered damages in consequence of an act lawfully committed by the defendant company in the exercise and enjoyment of a right acquired by virtue of the express provision of the statute, then the plaintiff cannot recover therefor.   In this state, this question must be deemed res judicata.

The plaintiff's injury, if any, does not flow from the wrongful act of anyone and hence is damnum absque injuria.   To hold otherwise, to hold that the mere tendency of an increased flow of water, at times, in its natural channel to wear away soil, is in itself a cause of action against the owners of mills and dams, would prevent all improvement of inland navigation, and would paralyze all industries dependent on water power.

On motion and exceptions by defendant.

Motion sustained.

Exceptions not considered.

Action on the case to recover damages which plaintiff town claimed to have sustained by reason of the defendant's dam across the Androscoggin River deflecting the current or flow of said river towards the Durham shore thereby causing injury to the highway along said shore. Plaintiff recovered a verdict for $1,489.15. Defendant filed a general motion for a new trial, and also excepted to certain instructions and refusals to instruct. The exceptions were not considered.

The case is sufficiently stated in the opinion.

*Newell & Skelton,* for plaintiff.

*George C. Wing, George C. Wing, Jr., and Henry E. Coolidge,* for defendant.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, SAVAGE, POWERS, JJ.

WHITEHOUSE, J.    In 1889 the defendant company erected on its own land and has since maintained, a dam across the Androscoggin river at Lisbon Falls, for the purpose of operating its paper mill there located. In order to obtain a suitable landing for the dam on the Durham side of the river, and give to the structure proper security and efficiency, the main dam, 311 feet long was constructed diagonally across the river, the upper side forming an obtuse angle with the Durham shore. A canal was cut on the Lisbon side in order to divert the water from its natural channel and make it available to propel the machinery of the defendant's mill. The bulkhead of the dam was built as far into the natural bank of the Lisbon shore as it was practicable to place it having regard to the location of the canal, and from that point downward, a wing dam or wing wall 200 feet long was constructed between the canal and the river nearly at right angles to the main dam and parallel with the Lisbon shore. At the lower end of this wing dam was located the penstock which conducts the water to the wheels of the defendant's mill, and the vent of the water from these wheels is at right angles to the river and towards the Durham shore. Prior to the construction of these works a ledge projected into the river some ten or twelve feet at the point where the main dam landed on the Durham

shore, and a portion of this rock was blasted off in order to form a broader rollway. Some of this blasting, however, was done by the defendant's predecessors in title. It is contended in behalf of the plaintiffs that whereas the projecting ledge had some tendency formerly to set the current of the river towards the Lisbon shore, the removal of a portion of the rock, the diagonal course of the main dam, the spillway over the wing dam and the flow of water from the mill wheels, have all had such a strong tendency the other way that the current of the river has been entirely changed from the Lisbon to the Durham shore, causing the injury to the public highway in Durham, a short distance below the dam, which forms the basis of this common law action for damages. It is claimed that the highway was undermined and rendered defective and dangerous by such diversion of the current of the river to their shore, and that the repairs thereby made necessary involved an expenditure of $3000. The jury returned a verdict for the plaintiff of $1489, and the case comes to this court on the defendant's motion and exceptions.

The plaintiff's fundamental proposition of fact that the current of the river has been entirely changed by the construction of the defendant's work is strongly controverted by the defendant. It is contended that the main current of the river is nearly midway between the two shores, and that it is substantially in the same place in which it was before the dam was built. It is insisted that whatever change has taken place in the current of the water after passing over the dam, is only such as might reasonably be expected to result and frequently does result in times of freshet, from the obstruction of the flow of a great volume of water by the erection of any dam. Upon this point there was a sharp conflict of testimony. But assuming that by reason of the defendant's works as constructed, the current acquired a greater momentum and velocity in falling from the crest of the dam at high water, and a stronger tendency to press against the Durham shore causing the injurious effect upon the highway to become more marked since the erection of the dam, it is still confidently asserted that no illegal or wrongful act has been committed by the defendant company which can create any liability on its part to pay damages for a consequential injury to the Durham highway.

It is not in controversy that the defendant company had a legal right to erect a dam across the Androscoggin river at Lisbon Falls for the purpose of operating its mill. It is provided by section 1 of the mill act, R. S., chapter 94, section 1, that "any man may on his own land, erect and maintain a water mill and dams to raise water for working it, upon and across any stream not navigable; or for the purpose of propelling mills or machinery, may cut a canal and erect walls and embankments upon his own land, not exceeding one mile in length, and thereby divert from its natural channel the water of any stream not navigable," etc. It is admitted that the defendant owned the land on both sides of the river at each end of the dam, and the land on which the canal was cut, the wing wall built and all the works in question constructed. It is not in controversy that the Androscoggin river at this point was a stream not navigable. The defendant was entering upon the establishment of an important industrial enterprise involving the development of a large and valuable water power. It is in evidence and undisputed that the dams were located in pursuance of plans devised by competent and skillful engineers, and all the works constructed under their direction and supervision. It is conceded in the plaintiff's argument that the general plan of the works was in accordance with correct principles of engineering as far as the defendant's purposes were concerned. There is no allegation in the writ that the peculiar location of the works was illegal or wrongful or the particular method of construction adopted by the defendant was negligent, unskillful or improper. The declaration states the fact that a dam was erected across the river at Lisbon Falls, and a wing dam constructed on the Lisbon side; alleges that the current of the river was thereby deflected towards the Durham shore, undermining the highway and rendering it dangerous for public travel, and concludes with the general averment that "the expense thereby incurred in repairing and protecting the same" were caused solely by the wrongful and negligent acts of the defendant in thus turning the waters of said river from their natural course," etc. There is no allegation that the main dam was built at an improper angle with the current of the river, or that the location of the canal and the wing wall, or the construction of any special part of the

VOL. C 16

work, was "negligent and wrongful." The act of the defendant in building these works is represented to be negligent and wrongful because it produced the result complained of; but there is no averment that this result was occasioned by any improper or negligent method of construction. There is no distinct allegation that the manner of building these dams was unreasonable, or was not necessary in order to secure the requisite strength and efficiency for the defendant's use and convenience. There is no averment that it was unreasonable or unnecessary or contrary to established rules of engineering to locate the dam diagonally across the river. There is no allegation that any part of the works was in any way defective or inadequate for the purpose for which it was erected.

It should also be noted here that there is no specific averment in the writ that the defendant company had accumulated a large head of water by its dams, and had then unreasonably, negligently and wantonly discharged it to the detriment of the highway on the Durham shore below the dam. It is not an action for damages resulting from any such unreasonable use or management of the water, as in *Frye* v. *Moore*, 53 Maine, 583.

But it is unnecessary to consider whether or not a demurrer would lie to the plaintiff's declaration, for the report fails to disclose any evidence in this case which would warrant a jury in finding that the defendant's works were either unlawfully or unreasonably located, or negligently, unskilfully or improperly constructed. Much prominence is given by plaintiffs' counsel to the discussion of the effect alleged to be produced by the water turned over the spillway and vented from the wheels at right angles to the natural channel of the river. But it appears from actual measurements made by the defendant's engineer at the time of the trial that the amount of water then running over the spillway was only a little more than 10 per cent of the amount flowing over the main dam, and the defendant's evidence in this case based upon actual tests and observation, shows that the water from the spillway as well as that vented from the mill wheels, is carried downward by the main current before it reaches the middle of the river. However that may be, there is neither allegation nor evidence that the canal, spillway, wheels and

tailraces were not reasonably and properly located and designed. On the contrary the evidence is positive and undisputed that all of these works were built according to the "approved fashion" under the immediate direction of competent engineers. Furthermore, it has been seen that the defendant company was expressly authorized by the statute above quoted, to divert the water from its natural channel by the construction of a canal and wing wall, and it needs no expert to tell us that such a canal with wing dam, in order to accomplish the object of it in a reasonable manner, must necessarily be substantially parallel with the shore and the water returned from the canal to the river nearly at right angles to the main current. This is shown by the testimony to be the approved and customary method of constructing these works; and it is obvious that to hold otherwise would practically abrogate the plain provisions of the statute which confer upon the land owner authority to construct such works.

Nor is it satisfactorily shown by evidence that the slightly oblique course of the dam across the river, in itself, exerts any appreciable influence upon the direction of the current of water below the dam. In any event, as already stated, there is neither allegation nor proof that the dam was located at an improper angle with the river or that the blasting off of a portion of the projecting ledge to obtain a suitable landing, was not reasonably necessary and proper under the circimstances of this case, in order that the defendant might enjoy the benefits of the right conferred by the statute.

Upon this state of the evidence, the question presented for determination is whether the plaintiffs are entited to compensation for the consequential injury to the highway below the defendant's dam resulting at freshet seasons from an increase in the volume, momentum and velocity of the water, and in the incidental pressure against the Durham shore, the dam being reasonably and properly located and rightfully constructed by the defendant company on its own land in accordance with the express authority of the statute, for the purpose of propelling a mill. It is the opinion of the court that the plaintiffs have thereby sustained a loss in fact without a wrong in law, the damnum absque injuria of the common law. They have

suffered damages in consequence of an act lawfully committed by the defendant company in the exercise and enjoyment of a right acquired by virtue of the express provision of the statute.

In this state the question must be deemed res judicata. In *Brooks* v. *Cedar Brook Improvement Co.*, 82 Maine, 17, it was held that where a dam, erected in accordance with legislative authority upon a non-tidal public stream to facilitate the driving of logs, caused an increased flow of water at times in the channel below, thereby widening and deepening the channel and wearing away more or less, the soil of a lower riparian owner, it is not such a taking of property as entitles the owner to compensation, but a case of damnum absque injuria. In that case the defendant company was incorporated by virtue of chap. 106 of the special laws of 1875, the second section of which provides as follows:

"Said corporation may construct as many dams, side dams, and sluices for the purpose of holding water on Cedar Brook and that part of Swift Cambridge river, situate in the town of Grafton, in the county of Oxford, as they may deem necessary for the purpose of floating or driving logs down said streams to lake Umbagog, and also to remove all stones, trees and other obstructions from the beds thereof, and said corporation may take land and materials for the purpose of locating and constructing said dams, and making other improvements and being accountable to the owners thereof for all damages, if any, to be ascertained by reference or by action upon the case."

In the opinion the court say: "The plaintiff brings this common law action to recover damages for that injury to his land. He makes no other complaint. None of his land has been appropriated by the defendants. They have not flowed nor occupied his land. They have not diverted any water from, or upon it. So far as appears, they have by their erections detained the water a reasonable time, and let it down in reasonable quantities, at proper seasons. This is just what is being continually done on nearly every stream in the state, and what every riparian owner submits to with little thought of claiming damages.

The plaintiff's injury, if any, does not flow from the wrongful act

of any one, and hence is damnum absque injuria. To hold otherwise, to hold that the mere tendency of an increased flow of water, at times, in its natural channel to wear away soil, is in itself a cause of action against the owners of mills and dams, would prevent all improvement of inland navigation, and would paralyze all industries dependent on water power. A law, requiring such a judgment, can never have been established by the people."

In *Henry* v. *Railroad Co.*, 30 Vt. 638, the defendant company in pursuance of legislative authority, built a bridge across a river with two piers in the stream, whereby the natural channel was obstructed and the current turned against the plaintiff's farm, washing away a large quantity of his land. It was held that the injury was consequential and that the plaintiff had no cause of action. In the opinion the court say: "It is not a cause of injury whose operation can be calculated or limited in its extent and operation or defined in any mode, and by consequence not one which in the nature of things can be guarded against. It is not a cause of damage which inevitably produces its effect, but only one which in its operation may require greater precaution against injury, to be used by proprietors below. Hence the law rather chooses to leave each proprietor to guard his own shore than to require the riparian owners above to forego any use of the water which they may deem beneficial to themselves. Thus mill owners or those who use water from a running stream for purposes of irrigation have never been required to restore the water to the stream at any particular point, or so as to leave the force and direction of the stream precisely the same as before, and if any such duty had existed, traces of it would, undoubtedly be found in the books. The act complained of is merely consequentially injurious, producing no direct injury like the flow of land, even by means of an obstruction in a running stream, and the damage to riparian owners below, by means of the change in the current, is so remote and uncertain a consequence that the law has not, and we think, it cannot hold the owner above liable for such consequences. It is one of those remote consequences of which the law takes no such account as to make it the basis of an action."

See also *Hollister* v. *Union Co.*, 9 Conn. 436; *Alexander* v. *Milwaukee*, 16 Wis. 264; *Green* v. *Swift*, 47 Cal. 536; *Holyoke Water Power Co.* v. *Conn. River Co.*, 20 Fed. Rep. 71.

The conclusion therefore is that the verdict of the jury was clearly against the law and the evidence and must be set aside.

*Motion sustained.    Verdict set aside.*